_____FILED _____ENTERED
_____LOGGED _____RECEIVED

MAR 09 2007

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| THAEON I. DIAZ,<br>    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA<br><br>    Respondent. | )<br>)<br>)<br>)  Civil Case No. RWT 06-1736<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

### I. PROCEDURAL HISTORY & BACKGROUND FACTS

On May 24, 2004, Petitioner Thaeon I. Diaz ("Diaz") pled guilty to two Class B misdemeanors, driving under the influence and driving with an expired registration. On August 18, 2004, United States Magistrate Judge Thomas M. DiGirolamo sentenced Diaz to 18 months probation, running concurrently for both counts, with the special condition of drug and alcohol counseling, and a $180 fine. Near the end of Diaz's probation, his probation officer ran a routine criminal record check. The check revealed that Diaz had been arrested on June 17, 2005, and later convicted, for drunk driving in Virginia. The probation officer filed a petition for violation of probation based on the new criminal conduct and that Diaz had not reported the incident to the probation officer.

On May 17, 2006, represented by Joseph Langone, Esq., Diaz appeared again before Judge DiGirolamo. Diaz admitted the violation of his probation. Judge DiGirolamo revoked Diaz's probation and sentenced him to 90 days imprisonment, with voluntary surrender. Diaz did not file a timely appeal. Subsequently, Diaz wrote a letter to Judge DiGirolamo requesting a new sentencing hearing and alleging that he had ineffective assistance of counsel in his previous sentencing hearing. This letter has been treated by this Court as a motion to vacate, set aside or correct sentence under

28 U.S.C. § 2255.

The matter before the court is whether Diaz had ineffective assistance of counsel, such that he would be entitled to a new sentencing hearing.

## II. STANDARD OF REVIEW

Diaz argues in his § 2255 motion that he had ineffective assistance of counsel. The landmark case regarding ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668 (1984). Strickland outlines a two-part test. Id. To demonstrate ineffective assistance of counsel, the defendant must show that 1) counsel's performance was deficient, that is that counsel made errors that were so serious that the counsel was not acting as the "counsel" guaranteed by the Sixth Amendment; and 2) that the errors made by counsel prejudiced the defense. Strickland , 466 U.S. at 687. This test was held to apply to challenges to guilty pleas based on ineffective assistance of counsel in Hill v. Lockhart, 474 U.S. 52, 58 (1985).

The Government claims that this court does not need to reach the issue of ineffective assistance of counsel, as it claims that Diaz's motion should be dismissed on other grounds. The Government relies on United States v. Lemaster for the proposition that, absent extraordinary circumstances, "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are 'always palpably incredible' and 'patently frivolous or false.'" 403 F.3d 216, 221 (4th Cir. 2005). However, that case is inapposite to Diaz's situation. In that case, there was a plea agreement which contained a waiver of the right to appeal or collaterally attack the agreement in Court. The transcript of the proceeding before Judge DiGirolamo makes clear that there was no plea agreement between Diaz and the Government. Additionally, Lemaster placed an emphasis on the sworn statements of the defendant, not the record

as a whole as the Government argues in this case. Thus <u>Lemaster</u> is not controlling here, and the Court will apply the two-part <u>Strickland</u> test. 466 U.S. at 687.

## III. ANALYSIS

In order to prove ineffective assistance of counsel, Diaz must show that his attorney's representation "fell below an objective standard of reasonableness," identifying specific acts or omissions. <u>Id.</u> at 687-88, 690. The defendant must overcome the Court's strong presumption that the attorney's conduct fell within the "wide range of reasonable professional assistance." <u>Id.</u> at 689. Here, Diaz cites two instances of ineffective assistance of counsel.

First, Diaz claims that his counsel and the Government had a sentencing agreement of 90 days imprisonment that he did not know about. The transcript from the May 17, 2006 hearing makes it clear that no such "secret" sentencing agreement existed between Mr. Langone and the Government; Judge DiGirolamo stated on the record that there was no sentencing agreement.[1] It appears that the Government made an offer for a plea agreement, and Mr. Langone informed Diaz of the offer. Diaz refused the offer, but Mr. Langone did not communicate that refusal to the Government prior to the hearing, and instead waited to raise this issue during the hearing. While perhaps it would have been best if Mr. Langone had communicated Diaz's rejection of the offer prior to the hearing, it cannot be said that not doing so falls "outside the wide range of professionally competent assistance." <u>Id.</u> at 690.

Second, Diaz claims in his Motion that his counsel was not well prepared and not fully aware of the court's procedures. As an example of his counsel's alleged delinquency, Diaz notes that his

---

[1] Stating in reference to 90 day sentence, "Okay. All right. So, it is not agreed upon." (Tr. at 13.)

counsel requested work release from Judge DiGirolamo, a sentence which is not allowed in federal court. Diaz claims that his Mr. Langone's request for work release is indicative that he was not aware of the alternative sentences available to Diaz in federal court. Diaz argues that because his lawyer was not aware of alternative sentences, he did not ask for them on Diaz's behalf.

Looking at the record, Diaz's arguments appear to be unfounded. Mr. Langone admitted that he was short on time to prepare for the hearing.[2] Mr. Langone also admitted that he did not know whether the work release program operated in the federal system.[3] However, Mr. Langone subsequently requested alternative sentences that could be ordered by Judge DiGirolamo. He requested a 30-day sentence, with a 21-day sentence of imprisonment, with the remainder to be served on weekends or through home confinement (Tr. at 12-13). He also requested the Court to fashion a remedy that would allow Diaz to keep his job (Tr. at 15). Judge DiGirolamo rejected any alternative punishment, stating that "90 days is a reasonable recommendation in light of it is the same offense while on probation" and allowing Diaz voluntary surrender to permit him time to get his affairs in order. (Tr. at 20). Thus, Mr. Langone's conduct was not beyond the "wide range of professionally competent assistance." Strickland, 466 U.S. at 690.

Assuming, in the alternative, that Mr. Langone committed errors in his representation of Diaz that satisfy the first part of the Strickland test, Diaz must also show the errors made by counsel prejudiced the defense and affected the judgment. Strickland, 466 U.S. at 691, 694 (stating that the

---

[2] "[T]he problem with some of these federal cases, Judge, is I don't have time for them really. I had less than 30 days to bring this case together for him. You know, with state court sometimes I get 90 days. I had a short period of time. I take my role as counsel seriously. I'm not just an attorney, and I try to see what I can do to help him." (Tr. at 9.)

[3] "I don't know exactly how it works with the federal court on work release, but I know [Diaz] is able to use the Metro. I don't if that qualifies with work release here in the federal program, but he is able to do that." (Tr. at 12.)

defendant must show that "there is a reasonable possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different; [a] reasonable probability is a probability sufficient to undermine confidence in the outcome"). Id. Diaz simply cannot make this showing. There is no indication from the transcript of this hearing that Judge DiGirolamo would have decided differently if Mr. Langone had more specifically requested alternative punishments. Given that Diaz could have received imprisonment of up to six months on each charge (Tr. at 5), it is not likely that Diaz will be able to show that he would have rather have pled not guilty and gone to trial. Thus, even if Mr. Langone committed errors in his representation of Diaz, those errors did not prejudice Diaz's defense.

Diaz's motion will be denied by separate order.

March 9, 2007
DATE

ROGER W. TITUS
UNITED STATES DISTRICT JUDGE